DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Shawn Diaz, appeals from his convictions and sentence in the Lorain County Court of Common Pleas. We affirm in part, and reverse in part.
 I. {¶ 2} On March 11, 2004, the Lorain County Grand Jury indicted Mr. Diaz of the following: (1) two counts of rape, in violation of R.C. 2907.02(A)(1)(b), a first degree felony, each with a sexually violent predator specification; (2) one count of attempted rape, in violation of R.C. 2923.02(A)/2907.02(A)(1)(b), a second degree felony, with a sexually violent predator specification; (3) three counts of endangering children, in violation of R.C. 2919.22(B)(5), a second degree felony; (4) nine counts of gross sexual imposition, in violation of R.C.2907.05(A)(4), a third degree felony, each with a sexually violent predator specification; (5) three counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4), a third degree felony, each with a sexually violent predator specification; (6) seven counts of intimidation, in violation of R.C. 2921.03(A), a third degree felony; (7) one count of gross sexual imposition, in violation of R.C. 2907.05(A)(1), a fourth degree felony; and (8) three counts of disseminating matter harmful to a juvenile, in violation of R.C. 2907.31(A)(1), a fourth degree felony. These charges were based on allegations of incidents occurring between January 2002 and March 2004, which involved a number of victims, including seven child victims.
 {¶ 3} Mr. Diaz pled not guilty to all of the charges. The State subsequently dismissed ten of the 25 counts in the indictment, which included endangering children, intimidation, and a gross sexual imposition charge with a sexually violent predator specification. Following a trial, a jury found Mr. Diaz guilty of all 15 remaining counts: two counts of rape, one count of attempted rape, eight counts of gross sexual imposition, one count of intimidation, and three counts of disseminating matter harmful to a juvenile. The jury also returned guilty verdicts on the sexually violent predator specifications.
 {¶ 4} The trial court sentenced Mr. Diaz to 15 consecutive prison terms, which consisted of life without parole on each of the rape charges; eight years to life for the attempted rape charge; five years to life on each of the charges of gross sexual imposition with a sexually violent predator specification; 18 months for the gross sexual imposition charge; five years for the intimidation charge; and 18 months for each of the disseminating matter charges. This appeal followed.
 {¶ 5} Mr. Diaz timely appealed, asserting four assignments of error for review.
 II. A. First Assignment of Error
"The trial court erred when it included the svp specification in the 10 sexual offense charges sent to the jury because all the charges stemmed from the same indictment. The appellant had never before been convicted of a sexually violent offense and, thus, the SVP specification was not available as a sentence enhancement."
 {¶ 6} In his first assignment of error, Mr. Diaz contends that the trial court improperly gave him enhanced sentences, because the specification findings were based on convictions for the charges listed in the same indictment and he did not have any previous convictions involving sexually oriented offenses. The State reluctantly concedes this fact and agrees that the matter must be remanded to the trial court for re-sentencing. We find that Mr. Diaz's contentions have merit.
 {¶ 7} The Supreme Court of Ohio has recently held that a "conviction of a sexually violent offense cannot support the specification that the offender is a sexually violent predator as defined in R.C. 2971.01(H)(1)[1] if the conduct leading to the conviction and the sexually violent predator specification are charged in the same indictment." State v. Smith,104 Ohio St.3d 106, 2004-Ohio-6238, at ¶ 32.
 {¶ 8} In the instant case, the convictions for the sexually violent offenses in the indictment supported the sexually violent predator specifications. There is no indication in the record that Mr. Diaz has prior convictions for sexually violent offenses. Therefore, we conclude that the sexually violent predator specification findings were made in error.
 {¶ 9} Mr. Diaz's first assignment of error is sustained. Pursuant to Smith, we remand the case for re-sentencing.
 B. Second Assignment of Error
"The trial court erred when it sentenced the appellant to consecutive life sentences as an enhanced sentence. The trial court applied factors such as committed worst type of the offense,' and a pre-sentencing report for a previous, non-associated, non-sexual crime when those factors were not admitted by the appellant nor decided by the jury. This enhanced sentence imposed by a member of the judiciary violates the right to trial by jury guaranteed by the 6th amendment to the constitution of the united states and Article I, Section 10 of the Ohio Constitution." [sic]
 {¶ 10} In his second assignment of error, Mr. Diaz asserts that his sentence violates his constitutional rights per Blakelyv. Washington (2004), 124 S.Ct. 2531, 159 L.Ed.2d 403. Specifically, Mr. Diaz contends that the trial court, and not a jury, made findings of fact on the record to support the sentence.
 {¶ 11} Mr. Diaz raises this constitutional argument for the first time on appeal. Generally, an appellant's failure to raise a constitutional argument to the trial court constitutes a waiver of that issue for the purposes of an appeal. State v. Porosky,
9th Dist. No. 22283, 2005-Ohio-1278, at ¶ 8, citing State v.White (June 16, 1999), 9th Dist. No. 19040, at *13; State v.Awan (1986), 22 Ohio St.3d 120, syllabus. Because Mr. Diaz has waived this argument, we decline to address it.
 {¶ 12} Mr. Diaz's second assignment of error is overruled.
 C. Third Assignment of Error
"The trial court erred when over previous in camera objection of defense counsel, it allowed the prosecutor to play selected excerpts of a videotaped interview/confession of the appellant. This selectively edited video denied appellant his rights under the fifth, Sixth and Fourteenth Amendments to the United States constitution and Article I, Section 10 of the Ohio Cons[titution]."
 {¶ 13} In his third assignment of error, Mr. Diaz maintains that the trial court improperly permitted the prosecution to impeach his trial testimony through the use of his tape recorded statements made during interviews with the detective who investigated the case, Lisa Dietsche.
 {¶ 14} Mr. Diaz objected to the use of the tapes at a pre-trial hearing on the basis that they were superfluous and irrelevant. He argued in the alternative, that, if the tapes were to be played, that they be played in their entirety without the redaction of any portions. The trial court did not rule on the objection. Mr. Diaz argues on appeal that the prosecution failed to play the tapes from beginning to end at trial, as requested by defense counsel during the pretrial hearing. Mr. Diaz complains that the prosecution would ask Mr. Diaz a question during examination, and then play only certain portions of the tape in order to impeach him.
 {¶ 15} However, Mr. Diaz's counsel failed to object to the playing of the tapes during trial. The failure to object constitutes a waiver of the issue. See State v. Grubb (1986),28 Ohio St.3d 199, 203. Therefore, Mr. Diaz failed to properly preserve this issue for appeal. Mr. Diaz concedes to his failure to object at trial, but argues that the trial court committed plain error in permitting the prosecution to use Mr. Diaz's own statements against him for impeachment purposes.
 {¶ 16} Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The Supreme Court has repeatedly admonished that this exception to the general rule is to be invoked reluctantly. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. In order for this Court to apply Crim.R. 52(B), it must be clear that the outcome of the trial would have been different but for the alleged error. See State v. Lane
(1995), 108 Ohio App.3d 477, 482.
 {¶ 17} Mr. Diaz admits in his brief that he confessed to nearly all of the acts for which he was being prosecuted, but complains that the prosecution took advantage of Mr. Diaz's asserted confusion during these interviews to paint a picture of the defendant as a liar. Mr. Diaz argues, that, had the tapes been played in their entirety, the jury would have seen that Dietsche's questioning had confused Mr. Diaz. Mr. Diaz argues that the presentation of the interviews in this fashion was clearly "unduly prejudicial against [him] and destroyed his credibility." Furthermore, Mr. Diaz complains:
"He was overly vilified for acts that he was not contesting and in the jury's collective mind, the probability that this `evil' man also raped these children was undoubtedly cemented. Thus, the improper playing of the tapes by the prosecutor casts a pall on the rape conviction proceedings and should be reversed as plain error." (Emphasis added.) {¶ 18} The State counters, and we agree, that this argument is insufficient to satisfy the plain error standard. Overall, Mr. Diaz cannot demonstrate, in light of the overwhelming evidence against him, that the result of the trial would have been different but for the use of his own recorded statements against him. See Lane,108 Ohio App.3d at 482. Each child victim testified as to Mr. Diaz's actions. Specifically, J.L. testified regarding an instance of forced fellatio, as well as Mr. Diaz's attempt to insert his penis in J.L.'s anal cavity. Additionally, D.J. testified that Mr. Diaz had performed fellatio on D.J. See R.C. 2907.02(A)(1)(b) and2907.01(A).
 {¶ 19} Mr. Diaz's third assignment of error is overruled.
 D. Fourth Assignment of Error
"Appellant was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution."
 {¶ 20} In his fourth assignment of error, Mr. Diaz contends that he was denied effective assistance of counsel because his trial counsel failed to cross-examine the child victims or object during the competency hearing, and also failed to cross-examine Dietsche regarding the methods she used to interrogate the child victims. We disagree.
 {¶ 21} A criminal defendant is guaranteed a right to the effective assistance of counsel by the Sixth Amendment. SeeMcMann v. Richardson (1970), 397 U.S. 759, 771, 25 L.Ed.2d 763. A two-step process is employed in determining whether the right to effective counsel has been violated:
"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington (1984),466 U.S. 668, 687, 80 L.Ed.2d 674.
 {¶ 22} In demonstrating prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. In addition, the court must evaluate "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690. "Ultimately, the reviewing court must decide whether, in light of all the circumstances, the challenged act or omission fell outside the wide range of professionally competent assistance." See State v.DeNardis (Dec. 29, 1993), 9th Dist. No. 2245-M, at *4.
 {¶ 23} The defendant has the burden of proof, and must overcome the strong presumption that counsel's performance was adequate and that counsel's action might be sound trial strategy.State v. Smith (1985), 17 Ohio St.3d 98, 100. There are numerous avenues through which counsel can provide effective assistance of counsel in any given case, and debatable trial strategies do not constitute ineffective assistance of counsel.State v. Clayton (1980), 62 Ohio St.2d 45, 49; State v. Gales
(Nov. 22, 2000), 9th Dist. No. 00CA007541, at *23.
 {¶ 24} Mr. Diaz argues that trial counsel failed to object to the prosecution's questioning of Dietsche, and specifically, one question that he asserts could have potentially yielded improper expert opinion testimony regarding the child victim's veracity, in violation of State v. Boston (1989), 46 Ohio St.3d 108. In that case, the Ohio Supreme Court held that "[a]n expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant." Id. at syllabus. Mr. Diaz maintains that the following discourse between the prosecution and Dietsche violated the rule in Boston:
"Q Is your purpose in interviewing the suspect such as this to bring whoever you get into an interview room to just confess to a crime?
"A No.
"Q What are you trying to get at?
"A I'm trying to get at the meat of the matter. What is going on.
"Q The truth?
"A Right."
Mr. Diaz argues that this testimony "effectively implied that her interviews returned only truthful answers," and thus violates the Boston standard.
 {¶ 25} First, we observe that the holding in Boston does not apply to this case, because Dietsche was never qualified as an expert for trial purposes and therefore could not have testified as such. Second, it does not appear that this discourse concerned Dietsche's questioning of child victims; rather, it references the suspect in this case, Mr. Diaz.
 {¶ 26} In either event, trial counsel's decision to cross-examine a witness and the extent of such cross-examination are tactical matters. State v. Flors (1987),38 Ohio App.3d 133, 139. As such, decisions regarding cross-examination are within trial counsel's discretion, and cannot form the basis for a claim of ineffective assistance of counsel. Id. (concluding that the extent of trial counsel's cross-examination is a matter of trial strategy and does not constitute ineffective assistance of counsel). Also, it is well settled that "trial counsel's failure to make objections is `within the realm of trial tactics' and does not establish ineffective assistance of counsel." Statev. McCroskey (Apr. 2, 1997), 9th Dist. No. 96CA0026, at *12, quoting State v. Hunt (1984), 20 Ohio App.3d 310, 311.
 {¶ 27} Based upon the foregoing, we find that Mr. Diaz has failed to demonstrate ineffective assistance of counsel in these instances. Mr. Diaz's fourth assignment of error is overruled.
 III. {¶ 28} Mr. Diaz's first assignment of error is sustained. The remaining assignments of error are overruled. Mr. Diaz's conviction in the Lorain County Court of Common Pleas is affirmed, but his sentence is reversed, and the cause is remanded for further proceedings consistent with this decision.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to both parties equally.
Exceptions.
Slaby, P.J. Moore, J. concur
[1] At the time Mr. Diaz was charged 2004, a "sexually violent predator" was defined as "a person who has been convicted of or pleaded guilty to committing, on or after January 1, 1997, a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." R.C. 2971.01(H). Effective April 29, 2005, the term "sexually violent predator" is defined as "a person who, on or after January 1, 1997, commits a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." R.C. 2907.01(H)(1).